666 So.2d 802 (1995)
Robert D. MORROW, Jr., David L. Morrow, Mrs. Louise May Morrow, and Mrs. Ellen Earline May, Widow and Sole Beneficiary Under the Last Will and Testament of H.L. May, Sr., Deceased,
v.
Dr. Michael VINSON, Ira Singleton, Shirley Hall, Ann Sturdivant, Elton Jay and Robert Whitehead.
No. 92-CA-01296-SCT.
Supreme Court of Mississippi.
December 14, 1995.
*803 Anselm J. McLaurin, John C. McLaurin, McLaurin & McLaurin, Brandon, for Appellant.
Robert R. Rester, Jr., Fred M. Harrell, Jr., Harrell & Rester, Brandon, Mack Cameron, Jackson, for Appellee.
En Banc.
SULLIVAN, Presiding Justice, for the Court:
This case began with the filing of two Complaints in the Chancery Court of Rankin County by the Trustees of the Rankin County School Board. One Complaint was filed against R.D. Morrow, Jr., David L. Morrow, and Louise May Morrow. Another was filed against H.L. May, Sr.; Mr. May died and his widow, Mrs. May, entered her appearance as a substituted party. The Complaints alleged that certain sixteenth section leases should be declared void due to the gross inadequacy of consideration initially paid for the leases.
The Morrows claimed under one lease assignment, and May claimed under another assignment. The two properties were adjacent to one another, and the separate leases were derived from the same base lease executed in 1946 to C.V. and Ruth Martin.
As the issue in the case was whether the base lease executed to the Martins was valid, the Morrows and May moved the court to consolidate the cases for trial. Hearings were conducted and the lower court entered an order declaring the lease under which the Morrows and May were claiming was void. Aggrieved by this ruling, the Morrows and May have appealed to this Court.

I.

IS THE RANKIN COUNTY BOARD OF EDUCATION EQUITABLY ESTOPPED FROM CHALLENGING THE SUBJECT LEASE?
The Morrows and May argue that the record is replete with references to situations placing the Trustees of the Rankin County Board of Education on notice that they were claiming under their leases. Further, they were claiming under the assumption that their leases were valid, while the Board suffered in silence for thirty-three years, and in the case of H.L. May, Sr., and now his successor, for twenty-nine years. The Morrows and May claim that as leaseholders they went to great trouble and expense, in plain view of all, to permanently improve their lands.
The Morrows and May claim that this entire transaction is a perfect, textbook example of estoppel, and the reasons for its existence in the law. Equitable estoppel arises when one party may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he otherwise would have had. Black's Law Dictionary 538 (6th ed. 1990).
While there is great sympathy for the position taken by the Morrows and May, such position is without validity in Mississippi law. We have consistently held that the theory of equitable estoppel will not protect those who took advantage of the trust property set aside to help support the public schools of this State. We stated in the case of Cinque Bambini Partnership v. State of *804 Mississippi and Saga Petroleum U.S., Inc., 491 So.2d 508 (Miss. 1986), aff'd sub. nom. Phillips Petroleum Co. v. Mississippi, 484 U.S. 469, 108 S.Ct. 791, 98 L.Ed.2d 877 (1988), that it had been called to our attention that there were no cases where the State of Mississippi had "been held as estopped, equitably or otherwise, to assert title to and dominion over properties otherwise within the public trust." Id. at 521. We went on to say that the States' delay in asserting dominion over the trust lands, the subject of that litigation, did not give rise to estoppel and the State's title may not be lost via adverse possession, limitations, or laches. Id. The Court held that under no circumstances may title held by the State for the public use and benefits be so lost. Id.
In Board of Educ. of Lamar County v. Hudson, 585 So.2d 683 (Miss. 1991), we held that "no estoppel may be enforced `against the state or its counties where the acts of their officers were unauthorized.'" Id. at 688 (quoting Oktibbeha County Bd. of Educ. v. Town of Sturgis, 531 So.2d 585, 589 (Miss. 1988)). Estoppel is inapplicable to preclude the board of education's assertion that the fee paid for a lease of sixteenth section school trust land was grossly inadequate so as to be an unconstitutional donation. Hudson, 585 So.2d at 688-89. The school board is not equitably estopped from asserting inadequacy of consideration for a lease of school trust land. Hill v. Thompson, 564 So.2d 1, 14 (Miss. 1989).
While there are no precise guidelines for determining when consideration is grossly inadequate, in Tally v. Board of Supervisors of Smith County, 353 So.2d 774, 775 (Miss. 1978), we stated that the consideration was grossly inadequate when sixteenth section land was leased at rates ranging from twenty cents per acre to eight-two cents per acre. In the case before us, the Board's expert witnesses provided the Chancellor with evidence indicating that on the date that the sixteenth section lease was entered into, October 7, 1946, the one time gross leasehold fee was approximately one half cent (1/2¢) per square foot for 99 years. The Board's expert witnesses determined that on October 7, 1946, the fee interest in the sixteenth section tract was worth two thousand dollars, not the one hundred fifty dollars paid by C.V. Martin and Ruth Martin.
Accepting the Board's expert testimony as true, the one time gross leasehold fee of one half cent per square foot, would easily fall within the `grossly inadequate' standard articulated by this Court, and thus the holding of Hill, that a school board is not equitably estopped from asserting inadequacy of consideration for a lease of school trust land, is applicable.
The first assignment of error is without merit.

II.

SHOULD THE TWENTY-FIVE YEAR PERIOD OF LIMITATIONS SET FORTH IN MISS. CODE ANN. § 29-3-7 (1972) BE APPLIED?
Next, the Morrows and May argue that the legislature provided in Miss. Code Ann. § 29-3-7 that after twenty-five years of possession of sixteenth section lands, a prima facie case is made of adverse possession. The Morrows and May claim that their possession for more than twenty-five years was evidence that the law was complied with and a lease was duly made.
The Morrows and May argue that this prima facie evidence was not overcome by the Board. They argue that their lease was duly issued, and that by disregarding this statute the State would deprive property owners of their vested rights without due process of law or just compensation, in violation of the Federal and State Constitution, and the Contract Clause of the United States Constitution.
Miss. Code Ann. § 29-3-7 is cited for the premise that possession for more than twenty-five years by them was evidence that the law was complied with and a lease was duly made. However, section 29-3-7 only applies to make the proof of adverse possession prima facie evidence of due execution, payment of consideration, and the like where lawful authority for the conveyance exists and the conditions of the statutes are met. *805 Adams County v. McCoy, 347 So.2d 366, 368 (Miss. 1977).
Also, Mississippi law is clear that the State is not subject to any statutes of limitations. "Statutes of limitations in civil causes shall not run against the State, or any subdivision or municipal corporation thereof." Miss. Const. of 1890, art. IV, § 104.
In Board of Educ. of Itawamba County v. Loague, 405 So.2d 122, 125 (Miss. 1981), we held that the adverse possession statute may not run against a County and if there is any conflict between Miss. Const. of 1890, art. 4, § 104 and Miss. Code Ann. § 29-3-7, the constitutional provision takes precedence.
We have also held that "[t]he principle that a governmental entity is not charged with the laches of its officials is also well settled," Hill v. Thompson, 564 So.2d 1, 14 (Miss. 1989), and that the State's title may not be lost by adverse possession or laches, Cinque, 491 So.2d at 521 (citations omitted).
We are asked to believe that because one-half cent per square foot was paid for sixteenth section land, that the Morrows and May have property rights that are now being taken away. However, we have consistently held that Miss. Code Ann. § 29-3-7 is inapplicable to the State, thus this claim is without merit.

III.

SHOULD THE 1946 LEASE TO C.V. MARTIN BE VIEWED IN LIGHT OF COMMON LAW TRUST RULES?
The Morrows and May argue that even though this Court has long held that the State of Mississippi holds title to sixteenth section lands in the status of trustee, a closer review shows that no binding trust relationship was created when the federal government patented these lands to the States. Therefore, they argue the common-law rules regarding trusts should not be applied, and adequacy of consideration is no longer an issue, and the question then becomes one of the mere existence of consideration.
Morrows and May cite the case of Madison County Bd. of Educ. v. Illinois Cent. R.R. Co., 939 F.2d 292 (5th Cir.1991) as supporting their theory in this case. The Fifth Circuit held that the reservation of section sixteen land for the use of schools did not create a binding trust obligation. The Morrows and May stated that because the Fifth Circuit decided that there was not a binding trust relationship, the Board "presented no proof in this case showing that acquisition of public lands from the federal government in Rankin County differed in any manner from that in Madison County, thus failing to sustain its burden of proving that trust principles should apply." What the Morrows and May failed to realize is that the above-cited case is a Fifth Circuit case, and that their appeal is before the Mississippi Supreme Court, which has consistently held that the sixteenth section land is held in trust by the Board in a trustee relationship.
The argument must fail for a second reason. The Fifth Circuit case upheld a grant by the Mississippi Legislature in 1882 to a railroad of sixteenth section land. Needless to say, there is not a grant made by the legislature involved here and the lease in question in the present case was issued after the 1890 Constitution, with its Section 95, in place and in full effect.
An overwhelming body of law sets forth that in the State of Mississippi sixteenth section land is trust land and title to such lands in the trust was granted to, and resides in, the State of Mississippi. Turney v. Marion County Bd. of Educ., 481 So.2d 770, 776-77 (Miss. 1985).
We have long held that the State, as trustee for the inhabitants of the township and for the support of the schools therein, acquired title to sixteenth section land at the time of the creation of the State. Pace v. State ex rel. Rice, 191 Miss. 780, 4 So.2d 270 (1941). We have also held that a lease of sixteenth section land to a private individual by the board of supervisors  who act as trustees in administering the property  is void where the lease is for grossly inadequate consideration, because in that case there has been, in effect, a donation of public property to a private person in violation of Art. 4, § 95, of the Mississippi Constitution. See Keys v. Carter, 318 So.2d 862, 864 (Miss. 1975); *806 Holmes v. Jones, 318 So.2d 865, 869 (Miss. 1975).
"[S]ixteenth section lands are held in trust for the benefit of the school children and these trusts with the attendant responsibilities of the trustee must be considered as other trusts are considered." Bragg v. Carter, 367 So.2d 165, 167 (Miss. 1979).
This assignment of error is without merit.

IV.

DO THE ACTIONS OF THE RANKIN COUNTY SCHOOL BOARD IN ATTEMPTING TO BREAK THE LEASE VIOLATE ITS DUTIES AS TRUSTEE?
Finally, the Morrows and May assert that the lower court should have allowed the leaseholders to develop the issue of damage to the trust from the breaking of leases. They also argue that public confidence in the stability of sixteenth section leasehold title is destroyed by lease breaking, ruining the sales and development of leased lands. The Board rejoins this argument by stating that as record title holder to school trust land, the State, through its managing or supervising agent  the board of education  has standing to bring or defend actions in Federal or State Courts respecting those trust lands, the same as any common law trustee.
In Hill it was held that the trustee had a continuing duty to manage the trust corpus so that income therefrom is reasonably maximized. "[W]here a reasonable yield is prevented by the trustee's wrongful conduct, this in no way serves to extinguish or ameliorate the trustee's continuing duty to produce a reasonable yield. The continuing duty of the trustee is enforceable at any time... ." Hill, 564 So.2d at 6-7.
It is well-established that sixteenth section lands constitute property held in trust by the public schools and must be dealt with by County Boards of Supervisors as such, with the rules applicable to trusts and trust property generally to be applied. Tally v. Board of Supervisors of Smith County, 323 So.2d 547, 550 (Miss. 1975). These lands within our state, have always been held to be trust lands for the benefit of the public schools. "In providing for the operation of these trusts, the legislature has retained the historical tie of these lands to particular townships in terms of both trust administration and beneficiary status." Hill, 564 So.2d at 5. The State cannot abdicate its duty as trustee of property in which the whole people are interested, such as sixteenth section land held by the State as trustee for the schools. Pace v. State ex. rel. Rice, 191 Miss. 780, 4 So.2d 270, 272 (1941).
"Common-law rules enforceable in the case of private trusts are applied to the public school land trust." Hill, 564 So.2d at 6 (citation omitted). "At common law, one who holds as trustee is prohibited from giving away, appropriating to his own use, or otherwise, disposing of the corpus of a trust, in derogation of the rights of beneficiaries." Id. at 6 (citations omitted).
The fourth assignment of error is without merit, and the holding of the Chancery Court of Rankin County, Mississippi, that the base lease executed in 1946 to C.V. Martin and Ruth Martin is void. We therefore affirm.
AFFIRMED.
DAN M. LEE, C.J., PRATHER, P.J., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ., concur.